1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

8

FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10

GENO and MARIA GOMEZ,

Case No. 1:14-cv-1499-BAM

Plaintiff,

11

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

v.

12
13

NATIONSTAR MORTGAGE, LLC,

14

Defendants.

15

_____ /

16
17

    Plaintiffs Geno and Maria Gomez ("Plaintiffs") bring this action against Defendant Nationstar

18

Mortgage, LLC ("Defendant" or "Nationstar").  (Doc. 1, Ex. A ["Compl."]) arising from the events

19

preceding the foreclosure of Plaintiffs' home.  Presently before the Court is Nationstar's motion to

20

dismiss pursuant to Rule 12(b)(6) for failure to state a claim.[1]  (Doc. 6). After a stipulation for an

21

extension of time, Plaintiffs filed an opposition to the Motion on November 21, 2014 (Doc. 14), to

22

which Defendant filed a reply on December 5, 2014.  (Doc. 15.)  On December 9, 2014, the Court

23

deemed the matter suitable for decision without oral argument and vacated the hearing scheduled for

24

December 12, 2014.  (Doc. 16.)    Having considered the moving, opposition, reply papers, and the

25

entire file, Defendant's Motion is GRANTED IN PART and DENIED IN PART.

26
27

[1]     On October 9, 2014, pursuant to 28 U.S.C. § 636(c)(1), the parties consented to have a United States Magistrate Judge conduct all further proceedings in this case, including trial and entry of final judgment.  (Docs. 5, 9).  Accordingly,

28

on October 7, 2014, the case was reassigned to Magistrate Judge Barbara A. McAuliffe for all purposes.  (Doc. 10).

## FACTS AND PROCEDURAL BACKGROUND

The core of Plaintiffs' complaint revolves around the allegedly improper placement of policies commonly known as either "Lender Placed Insurance" or "Force-Placed Insurance" ("LPI")[2] policies on property owned by Plaintiffs and subject to a mortgage in favor of mortgage servicing company, Nationstar.  Compl. ¶ 16, Doc. 1-1, Ex. A.[3] Plaintiffs allege that the LPI was implemented in bad faith and lead to the initiation of foreclosure proceedings against Plaintiffs.  *Id.* ¶ 10.

In 2004, Plaintiffs Geno and Maria Gomez entered into a contract to obtain a mortgage loan for the purchase of their home located at 1274 North McKinley Court, Dinuba ("the Property"), California, secured by a deed of trust.  Compl. ¶¶ 6, 11. Plaintiffs later refinanced their loan in 2006 through Home Loan Center (dba Lending Tree Loans), and then in October of 2010, the loan was transferred to Defendant Nationstar Mortgage, LLC, which was the loan servicer at all times relevant to the litigation. *Id.* ¶¶ 12, 15.

Plaintiffs allege that beginning in March 2011 Nationstar contacted Plaintiffs by telephone and alleged that Plaintiffs failed to maintain a current home owner's insurance policy on their home.  *Id.* ¶ 16.   While Plaintiffs informed Nationstar that their home owner's insurance policy was current, Nationstar purchased "lender placed insurance" on Plaintiffs' property and shifted the cost to Plaintiffs.  *Id.* During and after the conversations with Nationstar, Plaintiffs notified Nationstar that they did, in fact, have a current insurance policy.   *Id.* ¶ 16. In addition to confirming by phone, Plaintiffs allegedly submitted documentation to Nationstar showing that they obtained proper insurance through the American Automobile Association ("AAA").  *Id.*  However, Plaintiffs continued to pay the additional cost of the LPI insurance sums demanded by Nationstar each month. *Id.* ¶ 16, 20. According to Plaintiffs, approximately two years after Nationstar force-placed the LPI on Plaintiffs' property, Nationstar admitted that the insurance had been wrongly placed and that it would be

---

[2]     The U.S. Code defines LPI as "hazard insurance coverage obtained by a servicer of a federally related mortgage when the borrower has failed to maintain or renew hazard insurance on such property as required of the borrower under the terms of the mortgage." 12 U.S.C. § 2605(k)(2).

[3]     The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996) (on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the facts alleged in the complaint are true).

"corrected with the following mortgage statement." *Id.* ¶ 17.  In December 2011, Plaintiffs received a refund check, but Plaintiffs allege that the refunded amount was insufficient to cover the amount of funds erroneously provided to Nationstar. *Id.* ¶ 18.

In October 2013, Plaintiffs concede that they stopped making monthly mortgage payments on the Property because they believed that their payments were not being applied correctly and improperly placed into an escrow account. *Id.* ¶ 22.

On May 21, 2014, Plaintiffs received correspondence from Nationstar confirming that although the previous accounting errors had been corrected, Nationstar intended to foreclose on the Property. *Id.* ¶ 24, 25.  Through the assistance of counsel, Plaintiffs requested that Nationstar properly credit their mortgage account as a result of the force-placed insurance. Plaintiffs' requests were largely ignored and in February 2014, Nationstar executed a Notice of Default and a Notice of Trustee's Sale, set for August 13, 2014. *Id.* ¶ 27, 28.

Plaintiffs allege that Nationstar's accounting errors caused them continuing irreparable harm as a result of Nationstar's failure to rectify the LPI issue. On August 8, 2014, Plaintiffs filed suit against Nationstar in the Tulare County Superior Court asserting seven causes of action in connection with their insurance payment dispute including: (1) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601, *et seq.*; (2) fraud; (3) breach of contract; (4) breach of the implied covenant of good faith and fair dealing; (5) negligent misrepresentation; (6) promissory estoppel; and (7) unfair business practices in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*.  On September 24, 2014, Nationstar removed this case to this court. Nationstar now moves to dismiss the claims against them under Rule 12(b)(6).  Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted. *Bell Atlantic Corp. v. Twombly*, 550 U.S.

3

1  544, 570 (2007); *see* Fed.R.Civ.P. 12(b)(6). A dismissal for failure to state a claim is brought under

2  Federal Rule of Civil Procedure Rule 12(b)(6) and may be based on the lack of a cognizable legal

3  theory or on the absence of sufficient facts alleged under a cognizable legal theory. *Johnson v.*

4  *Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008); *Navarro v. Block*, 250 F.3d 729,

5  732 (9th Cir. 2001).

6         When the court reviews a complaint under Rule 12(b)(6), all of the complaint's material

7  allegations of fact are taken as true, and the facts are construed in the light most favorable to the non-

8  moving party. *Marceau v. Blackfeet Hous. Auth.*, 540 F.3d 916, 919 (9th Cir. 2008); *Vignolo v. Miller*,

9  120 F.3d 1075, 1077 (9th Cir. 1999). However, the court need not accept conclusory allegations,

10  allegations contradicted by exhibits attached to the complaint or matters properly subject to judicial

11  notice, unwarranted deductions of fact, or unreasonable inferences. *Daniels-Hall v. National Educ.*

12  *Ass'n*., 629 F.3d 992, 998 (9th Cir. 2010). Although they may provide the framework of a complaint,

13  legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action,

14  supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

15  (2009).[4]

16                                    **DISCUSSION**

17  **A.     Real Estate Settlement Procedures Act ("RESPA")**

18

19         In Plaintiffs' first cause of action, they assert that Nationstar violated § 2605(k)(1)(A) of

20  RESPA, which prohibits mortgage servicers from "obtain[ing] force-placed hazard insurance unless

21  there is a reasonable basis to believe the borrower has failed to comply with the loan contract's

22  requirements to maintain property insurance…" Compl. ¶ 35; 12 U.S.C. § 2605(k)(1)(A). Nationstar

23  moves to dismiss Plaintiffs' RESPA claim as a matter of law because § 2605(k) of RESPA, enacted by

24  the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124

---

[4]        Nationstar concurrently filed a request that the court take judicial notice of Defendant's rescission of notice of default publicly-recorded on August 21, 2014 with the Tulare County Recorder's Officer.  RJN, Ex. A. (Doc.  7).  The Court will take judicial notice of this document, as this document is a matter of public record, and Plaintiffs do not contest its authenticity. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).  Accordingly, the Court GRANTS Defendant's Request for Judicial Notice.

Stat. 1376 (2010), is inapplicable to events occurring prior to its effective date of transfer—January 10, 2014.  *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 F.R. 10696, 10696 (Feb. 14, 2013) ("This final rule is effective on January 10, 2014").  (Doc. 6 at 5).

The gravamen of Plaintiffs' suit is that Nationstar lacked a reasonable basis to force-place hazard insurance on Plaintiffs' property because Plaintiffs provided proof of the existence of such hazard insurance, an allegation squarely violating the provisions set out in RESPA § 2605(k). However, the hazard insurance at issue here was obtained in 2011. Compl. ¶ 20. Consequently, § 2605(k) is inapplicable to Plaintiffs' claims here as seen below.

In *Williams v. Wells Fargo Bank*, 2011 U.S. Dist. LEXIS 105513 at *14-19 (S.D. Fla. Sept. 19, 2011), the Florida Court extensively analyzed the question of the effective date for § 2605(k)-(m). The court found that the effective date for these subsections (§ 1463 of the Dodd-Frank Act) was governed by § 1400(c) of the Dodd-Frank Act, which provides that they do not become effective until final implementing regulations are passed, or 18 months after a designated "transfer date." *Berneike v. CitiMortgage, Inc*., 708 F.3d 1141, 1145 n.3 (10th Cir. 2013) further explains that in 2013, the Bureau of Consumer Financial Protection issued a final rule implementing the Dodd-Frank Wall Street Reform and Consumer Protection Act making the amendments to RESPA effective as of January 10, 2014.  *Id.*;  *Marquette v. Bank of Am., N.A*., 2015 U.S. Dist. LEXIS 13453 (S.D. Cal. Feb. 4, 2015) Accordingly, Section 2605(k) took effect on January 10, 2014, and was not in effect when Nationstar obtained LPI on Plaintiffs' property in 2011.   Further, the Dodd-Frank Act is not retroactive. *McCauley v. Home Loan Inv. Bank*, 710 F.3d 551, 554 n. 2 (4th Cir. 2013).  Thus, Plaintiffs' claim for a violation of Section 2605(k) of RESPA must be dismissed.

**B.     Fraud/Negligent Misrepresentation**

Plaintiffs' second and fifth causes of action relate to Nationstar's alleged fraudulent misrepresentations concerning the placement of the force-placed insurance.  Both claims are based on allegations that Nationstar misrepresented Plaintiffs' need for home-owner's insurance and then "used this misrepresentation to flag Plaintiffs' loan as having been in default, despite the fact that Plaintiffs

had a current policy in place."  Compl. ¶¶ 16-21.   Nationstar moves to dismiss Plaintiffs' fraud and negligent misrepresentation claims on two grounds.  First, Nationstar contends that Plaintiffs' fraud related claims are potentially barred by the statute of limitations.  (Doc. 15 at 3, 7-8).   Second, Nationstar argues that Plaintiffs have not alleged any fraudulent conduct with the level of specificity required by Federal Rule of Civil Procedure 9(b).  (Doc. 6 at 8).   Due to the relatedness of these inquiries, the Court will address these causes of action together.

To maintain a claim for fraud or intentional misrepresentation, a plaintiff must allege: (1) a false representation as to a material fact; (2) knowledge of its falsity; (3) intent to defraud; (4) actual and justifiable reliance; and (5) resulting damages. *E.g., Do Sung Uhm v. Humana, Inc*., 620 F.3d 1134, 1157 (9th Cir. 2010); *Glen Holly Entm't, Inc. v. Tektronix, Inc*., 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).

To maintain a claim for negligent misrepresentation a plaintiff must allege: (1) the misrepresentation of a past or existing material fact; (2) made without reasonable ground for believing it to be true; (3) with intent to induce reliance on the misrepresented fact; (4) justifiable reliance on the misrepresentation; and (5) resulting damages. *E.g., Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Group, Inc*. 171 Cal. App. 4th 35, 50 (Cal. Ct. App. 2009).

Where a negligent misrepresentation claim is brought alongside one for fraud, both claims should meet the heightened pleading requirements of Rule 9(b). *See Rankine v. Roller Bearing Co. of Am., Inc*., 2013 WL 55802, at *4 (S.D. Cal. 2013); *Das v. WMC Mortg. Corp*., 831 F.Supp.2d 1147, 1166 (N.D. Cal. 2011).   Rule 9(b) states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. Thus, the Ninth Circuit has held that, "while a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Vess v. Ciba—Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003). In other words, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Kearns v. Ford*

*Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991).

Plaintiff alleges the following misrepresentations: (1) beginning in or about March 2011, they began receiving phone calls from Nationstar, indicating that Plaintiffs did not have home owner's insurance, even though they had a current policy through American Automobile Association (AAA); (2) in addition to confirming by phone, Plaintiffs, on multiple occasions, submitted written correspondence on their mortgage statement, confirming that their insurance through AAA was current. Compl. ¶16; (3) Nationstar admitted their mistake, but credited Plaintiffs with only a partial refund. Compl. ¶¶17-18; (4) Nationstar instead continued to hold Plaintiffs' mortgage payments and profit from payments for a non-existent policy.

Here, while Plaintiffs identify the specific misrepresentations made by Nationstar—that Plaintiffs failed to maintain proper home owners insurance—Plaintiffs' complaint fails to state who allegedly made fraudulent representations on behalf of Nationstar, whether those speakers had authority to speak, how the alleged misrepresentations were made, or any of the other facts necessary to state a fraud claim. In other words, the complaint does not properly identify "'the who, what, when, where, and how'" of the alleged fraud. *Vess*, 317 F.3d at 1106 (*quoting Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Instead, Plaintiffs' combine all purportedly fraudulent conduct together in a generalized summary, which is insufficient under Rule 9(b).

More troubling, is at least some of Plaintiffs' fraud and negligent misrepresentation claims appear to be barred by the statutes of limitations for fraud and negligent misrepresentation under California Code of Civil Procedure sections 338(d)[5] and 339(1).[6] As a general rule, the limitations

---

[5]    Pursuant to California Code of Civil Procedure § 338(d), there is a three-year statute of limitations for "[a]n action for relief on the ground of fraud or mistake.  Cal. Code Civ. Proc. § 338.

[6]    When a cause of action alleges negligent misrepresentation, the statute of limitations is two years. *Ventura Cnty. Nat. Bank v. Macker*, 49 Cal. App. 4th 1528 (1996); *see also* Cal. Code Civ. Proc. § 339. As discussed above with respect to the fraud claim, the delayed discovery rule may apply. Fox, 35 Cal. 4th at 808.

period in a case is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake.  Cal. Code Civ. Proc. § 338(a)(2).   Here, as Nationstar argues, the majority of Plaintiffs' allegations supporting their fraud/misrepresentation claims involve representations stemming from March 2011 when Plaintiffs began receiving phone calls from Nationstar notifying them they did not have home owner's insurance.  During those conversations, Plaintiffs notified Nationstar that they did in fact have a current insurance policy through AAA. Compl. ¶ 16. This occurred more than three years from the date of the filing of the complaint, and Plaintiffs do not allege delayed discovery of the fraud/misrepresentations.  *See* Cal. Civ. Proc. Code § 338(d) (providing that the statute of limitations begins to run when plaintiff discovers the fraud). Conversely, Plaintiffs explicitly allege in their Complaint that "during those [March 2011] conversations," they immediately disputed Nationstar's contentions that Plaintiffs needed hazard insurance.  Plaintiffs further do not argue in their opposition that their fraud claims are timely.

When "[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show; (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. The burden is on the plaintiff to show diligence, and conclusory allegations will not withstand demurrer." *E-Fab, Inc. v. Accountants, Inc. Servs*., 153 Cal. App. 4th 1308 (Ct. App. 2007).  Plaintiffs' Complaint fails to specifically plead such facts and therefore Plaintiffs' fraud and negligent misrepresentation claims are dismissed with leave to amend.

### C.      Breach of Contract

Nationstar asserts that Plaintiffs have failed to state a claim for breach of contract under California law.  To state a claim for breach of contract, a party must plead the existence of a contract, his or her performance of the contract or excuse for nonperformance, the defendant's breach, and resulting damage. *Vaccarino v. Midland Nat. Life Ins., Co*., 2011 WL 5593883, at *7 (C.D. Cal. Nov. 14, 2011).  Defendant contends that Plaintiffs' claim for breach of contract fails because Plaintiffs have not, and cannot, allege their own performance under the mortgage contracts, because Plaintiffs

admit that they stopped making their monthly mortgage payments in 2013.  Compl. ¶ 13.  In essence, Nationstar argues that Plaintiffs cannot enforce the mortgage they themselves breached.

Contrary to Nationstar's argument, the fact that Plaintiff subsequently breached their mortgage by failing to satisfy their monthly mortgage payments does not preclude Plaintiffs' breach of contract claim. Indeed, Plaintiffs subsequent foreclosure is immaterial for the purposes of Plaintiffs' breach of contract claim.  While insurance companies regularly undertake the practice of force-placed insurance; Plaintiffs Deed of Trust explicitly states that insurance may be force-placed only "if the borrowers fail to maintain…coverage." Exhibit A ¶ 5.   Plaintiffs' allege and Defendants do not dispute that Plaintiffs' insurance coverage never lapsed and therefore the force-placed insurance was a breach of the express written agreement.  The fact that Plaintiffs' later foreclosed, while relevant to the issue of damages, does not excuse Nationstar's original breach.

Further, several courts have rejected the similar arguments presented by defendants here. *See, e.g., Longest v. Green Tree Servicing LLC*, 2015 U.S. Dist. LEXIS 16173, ** 11-13 (C.D. Cal. Feb. 9, 2015) (denying to dismiss Plaintiffs' breach of contract claim for violations of a hazard insurance agreements when Defendants alleged that Plaintiffs failed to fully perform under the contract); *Persaud v. Bank of Am., N.A.*, 2014 WL 4260853, at *8 (S.D. Fla. Aug. 28, 2014) ("Contrary to Defendants' argument, the fact Plaintiff initially breached the Mortgage when his insurance policy lapse does not preclude his breach of contract claim."); *Hamilton v. Suntrust Mortgage Inc*., 2014 WL 1285859, at *4 (S.D. Fla. Mar. 25, 2014) ("SunTrust chose to continue the mortgage contracts by exercising its discretion to force-place insurance after Plaintiffs' admitted breaches . . . For this reason, Plaintiffs' prior breaches of their mortgage contracts—regardless of whether they were material breaches—do not preclude their claim for breach of the implied covenant of good faith and fair dealing against SunTrust.). Although Nationstar directs the Court to *Passantino Miller v. Wells Fargo Bank, N.A.*, 2013 WL 57024, 2013 U.S. Dist. LEXIS 1061 at *5 (E.D. Cal. Jan. 3, 2013) (granting motion to dismiss FPI breach of contract claim where plaintiffs alleged neither performance nor excused performance), *Passantino* is easily distinguished because there the Court noted that "Plaintiffs do not allege that they undertook any efforts to obtain flood insurance in any amount.*") Passantino*

9

*Miller*, 2013 U.S. Dist. LEXIS 1061, at * 15. Nationstar does not dispute that Plaintiffs maintained the proper insurance here, and for that reason, coupled with reading the Complaint in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately alleged a breach of contract claim.

Accordingly, Nationstar's Motion is DENIED as to the breach of contract claim.

**D.      Breach of the Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs' Fourth Cause of Action alleges that Nationstar breached the implied covenant of good faith and fair dealing by "acting in bad faith" when "failing to properly credit Plaintiffs' payments to their loan, continued to charge Plaintiffs' fees for force-placed insurance, and are continuing to categorize Plaintiffs' loan as delinquent." Compl. ¶ 65. Nationstar contends the Fourth Cause of Action "does not identify any express provision of the deed of trust or note that Nationstar allegedly breached." (Doc. 11 at 16).  According to Nationstar, because Plaintiffs only assert actions that allegedly violated "the spirit" of their contract, they cannot maintain a cause of action for breach of the implied covenant as a matter of law.  (Doc. 11 at 9).

Every contract contains an implied-in-law covenant of good faith and fair dealing, *see Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371, 6 Cal. Rptr. 2d 467, 826 P.2d 710 (1992), and "the burden [so] imposed is that neither party will do anything which will injure the right of the other to receive the benefits of the agreement," *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1393, 272 Cal. Rptr. 387 (1990). Said another way, to establish a breach of the covenant, then, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from that contract. *Lester v. J.P. Morgan Chase Bank*, 926 F. Supp. 2d 1081, 1097 (N.D. Cal. 2013).  "The implied covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose," "as a general matter, implied terms should never be read to vary express terms." *Carma Developers*, 2 Cal. 4th at 373.

Plaintiffs' Complaint makes specific allegations that their implied covenant claims is based on Nationstar's "failure to properly credit Plaintiffs' payments to their loan" and continued to "categorize

10

Plaintiffs' loan as delinquent."  Plaintiffs further explain in their opposition that Nationstar acted in bad faith by failing to properly credit Plaintiffs' payments to their loan, by continuing to charge Plaintiffs fees for force-placed insurance despite giving Nationstar notice over the phone and in writing that Plaintiffs maintained a current insurance policy.  The express provisions violated are detailed in paragraph five of the Deed of Trust, which precludes lenders from force-placed insurance initiation on the Subject Property when there was no lapse in coverage, and failing and refusing to refund premiums for force-placed insurance even though there was no lapse in coverage. Compl. ¶ 59.

Taking Plaintiffs' allegations as true, and considering them in the light most favorable to Plaintiffs, the Court finds Plaintiffs have sufficiently pleaded Nationstar's interference with a right to receive the benefits of the agreement.  Plaintiffs alleged that Nationstar refused to accept their correct assertions that Plaintiffs maintained home insurance even though they were currently paying for a sufficient insurance policy with AAA.  This refusal plainly frustrates Plaintiffs' rights to benefit from the Deed of Trust which states that Plaintiffs will be free from LPI if they maintain an adequate home insurance policy.  Indeed, to find otherwise would give Nationstar the power to unilaterally overcharge Plaintiffs, potentially forcing them into default. *See Daly v. United Healthcare Ins. Co.*, 2010 U.S. Dist. LEXIS 116048, 2010 WL 4510911, at *4 (N.D. Cal. Nov. 1, 2010) (noting "exact nature and scope of . . . duty [under implied covenant] is a factual inquiry and is based on the purposes of the [a]greement, the express terms of the [a]greement, and the reasonable expectations of both parties").

Accordingly, Plaintiffs' Fourth Cause of Action is not subject to dismissal.

**E.   Promissory Estoppel**

Nationstar next challenges Plaintiffs' promissory estoppel claim because Plaintiffs fail to allege that Nationstar made any unfulfilled promises.  Specifically, Nationstar states that "there are no promises alleged by Plaintiffs which clearly give rise to an estoppel claim."  (Doc. 6 at 13).  While Plaintiffs' refers to "these promises," Defendants argue that Plaintiffs fail to identify "what these promises were."  (Doc. 6 at 13).   Indeed, Plaintiffs' promissory estoppel claim is based on the "promises" identified in Plaintiffs' breach of contract claim. Plaintiffs base their promissory estoppel claim on the "clear promise [that] was made within the Deed of Trust that restricts Defendant's right

to forcefully place insurance where Plaintiffs have a valid insurance policy." Compl. ¶ 79.  In essence, Plaintiffs rely on both promissory estoppel and conventional breach of contract theories in arguing that Nationstar breached the promises made in their mortgage agreement when it purchased excessive hazard insurance.

"The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 901 (2005).  Generally, a plaintiff cannot rely on promissory estoppel when it also seeks to enforce a contract that it argues is supported by valid consideration. *See Horne v. Harley-Davidson, Inc*., 660 F. Supp. 2d 1152, 1163 (C.D. Cal. 2009) ("Plaintiffs cannot state a cause of action for promissory estoppel because a valid contract, supported by consideration, governs the same subject matter as the alleged promise."). Promissory estoppel is meant as a "substitute for consideration." *Horne,* 660 F.Supp.2d at 1162. The California Supreme Court has stated that the doctrine of promissory estoppel is meant "to make a promise binding, under certain circumstances, without consideration in the usual sense of something bargained for and given in exchange." *Youngman v. Nevada Irrigation Dist*., 70 Cal. 2d 240, 249 (1969).

Plaintiffs' central theory is that Nationstar made promises to Plaintiffs through their Deed of Trust regarding when Nationstar would purchase hazard insurance and Plaintiffs reasonably relied on those promises to their detriment. By claiming both breach of contract and promissory estoppel, Plaintiffs are simultaneously alleging that those promises were part of a valid contract and that they were unsupported by consideration. Even though Plaintiffs' breach of contract and promissory estoppel claims are mutually exclusive, *see Walker v. KFC Corp.*, 728 F.2d 1215, 1220 (9th Cir. 1984) (holding that as a matter of law, promises supported by adequate consideration cannot also form the basis of a promissory estoppel claim), the federal rules allow plaintiffs to plead inconsistent claims and theories, see *Molsbergen v. United States*, 757 F.2d 1016, 1019 (9th Cir. 1985) (holding that the federal rules give freedom to plead inconsistent claims) (citing Fed. R. Civ. P. 8(e)(2)); *see also Treefrog Devs., Inc. v. Seidio, Inc.,* 2013 U.S. Dist. LEXIS 110760, *21 (S.D. Cal. Aug. 6, 2013)

(allowing Plaintiff to plead inconsistent theories of breach of contract and promissory estoppel under the Federal Rules of Civil Procedure.)

Therefore, Nationstar's motion to dismiss Plaintiffs' promissory estoppel claim is denied.

**F.    UCL Violation**

Plaintiffs' seventh claim for relief arises under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq.*  The California UCL prohibits three separate types of business practices or acts that are either 'unfair' or 'unlawful,' or 'fraudulent.'"   *Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 1496 (2003); *see also CelTech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Nationstar moves to dismiss Plaintiffs' UCL claim under both the "unfair" and "fraudulent" practices prong.  (Doc. 6 at 13).

**1.    Unfair Business Acts or Practices**

Plaintiffs allege that due to Nationstar's unfair business practices, they have suffered economic injury sufficient to maintain a cause of action under the "unfair business practices prong" of the UCL. (Doc. 14 at 12).  Nationstar argues that Plaintiffs' UCL claim under the unfairness prong should be dismissed as derivative of Plaintiffs failed RESPA cause of action.  Specifically, Nationstar argues that Plaintiffs cannot tether their claims to the legislative policies set out in the non-retroactive amendment of RESPA § 2605(k) because it was not in effect at the time of the events occurring in Plaintiffs' suit.

California courts of appeal have applied three different tests to evaluate claims by consumers under the UCL's unfair practices prong. *Drum v. San Fernando Valley Bar Assn.*, 182 Cal. App. 4th 247, 256 (2010).  Under the first test (tethering test), a consumer must allege a "violation or incipient violation of any statutory or regulatory provision, or any significant harm to competition." *Id.* The "public policy which is a predicate to a consumer unfair competition action under the 'unfair prong' of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Id.*

Under the second test (balancing test), the "unfair prong" requires a consumer to plead that (1) a defendant's conduct "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and (2) "the utility of the defendant's conduct" is outweighed by "the gravity of the harm to the alleged victim." *Id.* at 257 (*citing Smith*, 93 Cal. App. 4th at 718-719). The third test, which is

13

based on the Federal Trade Commission's definition of unfair business practices, requires that, as a result of unfair conduct, "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Id.* (citation and internal quotation marks omitted).

In *Lozano v. AT&T Wireless Servs*., 504 F.3d 718, 736 (9th Cir. 2007), the Ninth Circuit endorsed the tethering test or the balancing test and declined "to apply the FTC standard in the absence of a clear holding from the California Supreme Court." *See Ferrington v. McAfee, Inc*., 2010 U.S. Dist. LEXIS 106600, 2010 WL 3910169, at *12 (N.D. Cal.) ("Pending resolution of this issue by the California Supreme Court, the Ninth Circuit has approved the use of either the balancing or the tethering tests in consumer actions, but has rejected the FTC test.") (citation omitted); *I.B. ex rel. Fife v. Facebook, Inc*., 905 F. Supp. 2d 989, 1010-11 (N.D. Cal. 2012).

Thus, for this Court's purposes, Nationstar's conduct is "unfair" under the UCL when the alleged unfairness is (1) "tethered to some legislatively declared policy" or (2) "when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and the utility of that conduct is outweighed by the harm to consumer. *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169-71 (9th Cir. 2012).

As to the first test, although neither the parties' briefing nor this Court's research identified any authority directly on point, the following general principles lead to the conclusion that, contrary to Nationstar's assertion, Plaintiffs are not barred from tethering their unfair UCL claim to the non-retroactive provisions of RESPA. Instead, Plaintiffs need merely to show that the effects of Nationstar's conduct is "comparable to or the same as a violation" of an established law," not that Plaintiffs meet all of the procedural requirements of that law. *Cel-Tech*, 20 Cal. 4th at 187.

In *Cel-Tech Communications,* the seminal case construing the "unfairness" prong of UCL, the California Supreme Court addressed the reasoning behind the tethering requirement under the UCL. *Cel-Tech* concluded: "[T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section

14

17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Cel-Tech*, 20 Cal.4th 163 at 180. The Court discussed the broad scope of the UCL and how the Legislature intentionally made the UCL broad "to enable judicial tribunals to deal with the innumerable, " 'new schemes which the fertility of man's invention would contrive." *Id.* at 181. "When a scheme is evolved which on its face violates the fundamental rules of honesty and fair dealing, a court of equity is not impotent to frustrate its consummation because the scheme is an original one" ' "].) Further, as seen in *Bardin*, California state courts have explained that requiring Plaintiffs to tether their unfair UCL claims to "some legislatively declared policy or proof" is to create a defined standard of unfairness and to prevent "unpredictable decisions of what fair and unfair is." *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1267 (2006). Thus, by requiring that a UCL claim is tethered to an established law, the UCL "borrows violations of other laws and treats them as unlawful practices under the unfair competition law making them independently actionable. *Cel-Tech*, 20 Cal. 4th at 188. Overall, the understanding here, is that the UCL serves as a stop gap measure, making conduct that might not otherwise be enforceable actionable under the UCL.

In further addressing the question of whether Plaintiffs' UCL unfairness claim is time-barred by RESPA's effective date, controlling authority from this district is additionally instructive. In *Hunt*, the Eastern District of California held that the UCL's four year statute of limitations applies even if the borrowed statute has a shorter statute of limitations. *Hunt v. Wells Fargo Bank*, No. 13-cv-02435-MCE-KJN, 2014 U.S. Dist. LEXIS 35330, 2014 WL 1028391, at *4 n.4 (E.D. Cal. Mar. 17, 2014). In *Hunt*, the Court concluded that the California Civil Code section 580b; the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civil Code. § 1788 *et seq*. and the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. were time barred. 2014 U.S. Dist. LEXIS 35330, [WL] at *3. However, the Court then explained that the UCL, which has a four year statute of limitations, was timely even though the underlying statutes had shorter statute of limitations and were time barred. 2014 U.S. Dist. LEXIS 35330, [WL] at *4 n.4. "Because Plaintiff's causes of action under the UCL survives or fails based upon the underlying statutes, despite the fact those claims are time-barred, it is nonetheless necessary to address the merits of Plaintiff's predicate causes of

action." 2014 U.S. Dist. LEXIS 35330, [WL] at *4. Ultimately, the UCL claim was dismissed because the merits underlying causes of action failed to state a claim. 2014 U.S. Dist. LEXIS 35330, [WL] at *4-5.

Based on the federal and state court interpretation of the tethering test under the unfairness prong, this Court finds that Plaintiffs may tether their allegations to the spirit of an enforceable law even if Plaintiffs do not satisfy the laws express procedural requirements.  Here, Plaintiffs' complaint alleges that Nationstar unfairly attempted to force-place duplicative insurance and in turn collect additional fees and "illicit profits" that were not owed—a practice deemed improper under RESPA § 2605(k)(1)(A). Compl. ¶ 90, 93.  Although 12 U.S.C. § 2605(k)(1)(A), was not in effect at the time of the events underlying Plaintiffs suit occurred,  Plaintiffs allegations are based on Nationstar's alleged pattern of behavior in force-placing unnecessary insurance to the consumers detriment and Nationstar's benefit, which violates the public policy underlying RESPA.  While Plaintiffs do not have an independent action under RESPA, the unfairness prong makes Plaintiffs' claims "independently actionable" under the UCL. As a result, Plaintiffs satisfy the tethering test, which requires the unfairness alleged to be "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Davis*, 691 F.3d at 1170.  Accordingly, the Court concludes that Plaintiffs have pleaded adequate facts to bring a claim under the "tethering test" of the UCL's "unfair" prong.

As to the second test, Plaintiffs' allegations are similar to a line of cases dealing with backdated force-placed insurance policies.  In dealing with similar allegations, a Court in the Northern District of California denied the defendant's motion to dismiss where Plaintiffs challenged Defendant's conduct in force-placing unnecessary, and duplicative insurance.  *McNeary-Calloway v. JP Morgan Chase Bank, N.A.*, 863 F. Supp. 2d 928, 962 (N.D. Cal. 2012). In *McNeary*, the Court found that the practice of placing unnecessary hazard insurance despite a lack of property damage or during the backdated period was "disadvantageous to Plaintiffs and unsupported by any apparent reason other than the fact that Defendants stood to benefit financially from the high-priced, backdated policy. Moreover, Defendants' arrangement with [the force-placed insurance company] resulted in

16

financial gains to Defendants, at Plaintiff's expense." *Id.* The Court also dismissed the Defendants' contentions that the plaintiffs could have avoided the alleged unfair conduct by purchasing their own hazard insurance, stating that it could not, as a matter of law, hold that "Plaintiffs could reasonably have avoided Defendants' alleged unfair practice." *Id.*

The Court follows the reasoning in *McNeary* and the weight of authority in district court cases that denied motions to dismiss claims supported by similar allegations in force-placed insurance cases and concludes Plaintiffs have alleged enough facts to state an unfair business practice under the balancing test. Plaintiffs' allegations of placing duplicative insurance and forcing Plaintiffs to pay for unnecessary insurance to Nationstar's benefit is sufficiently pled to survive a motion to dismiss. *See also, Hofstetter v. Chase Home Fin*., LLC, No. C 10-01313 WHA, 2010 U.S. Dist. LEXIS 84050, 2010 WL 3259773, at *15 (N.D. Cal. Aug. 16, 2010) (denying motion to dismiss unfair UCL claim alleging lender that force-placed flood insurance violated principles articulated in regulations).

Here, Plaintiffs have alleged that defendants violated the "unfair" prong of Section 17200 by force-placing unnecessary and duplicative insurance. Plaintiffs further allege that "they paid increased insurance premiums as a part of their mortgage payments as a result of Defendant's scheme of purchasing an unnecessary policy through Harwood Service Company on Plaintiffs' behalf." (Doc. 14 at 13). Plaintiffs have further alleged in their complaint that this harm to consumers is outweighed by its benefits. (Compl. ¶¶ 90-93.) Finally, Plaintiffs' unfair business practices claim does not focus solely on harms committed by Nationstar to Plaintiffs, but refers to the practice of placing insurance that results in "unwarranted and unfair fees against California consumers." Compl. ¶ 90.   At the motion to dismiss stage, these are sufficient allegations of a practice by Nationstar that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McNeary-Calloway*, 863 F. Supp. 2d at 962 ("The Court declines to grant Defendants' Motion on the 'unfair' prong of the UCL claim as to any Plaintiff because the Court cannot say, as a matter of law, that Defendants alleged conduct would not violate any of the three tests [enumerated by California courts] for unfair conduct.").   Accordingly, the Court finds that Plaintiffs satisfy the balancing test given the lenient standard on a motion to dismiss.

### 2.     Fraudulent Business Acts or Practices

Nationstar further argues that like Plaintiffs second cause of action for fraud, Plaintiffs' claim under the "fraudulent prong" of the UCL should be dismissed because Plaintiffs have not pled fraud with specificity.

Because the Court finds that Plaintiffs have alleged sufficient facts to proceed on their UCL claims under the unfair prong of section 17200, the Court need not address Plaintiffs' arguments that it meets the other two prongs. To the extent, however, that Plaintiffs' UCL claim is predicated on fraud, Plaintiffs have not and cannot meet the heightened pleading standard imposed by Rule 9(b). Claims under the fraud prong of Section 17200 are still subject to the heightened pleading requirements of Rule 9. *Kearns,* 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the [Cal. Civ. Code Section 1770] and [Cal. Bus. & Prof. Code Section 17200].") As discussed above, Plaintiffs' UCL claim is comprised of conclusory and vague allegations that Nationstar improperly force-placed insurance on Plaintiffs' property.  For those reasons, Plaintiffs have not sufficiently alleged fraud and thus, to the extent that this claim is predicated on fraudulent acts, it must be dismissed. Otherwise, Nationstar's Motion to Dismiss Plaintiffs' UCL claim is DENIED.

///

///

///

///

///

///

///

///

///

///

///

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss Plaintiffs' complaint is GRANTED IN PART with LEAVE TO AMEND and DENIED IN PART as follows:

1. Plaintiffs' First, Second, and Fifth causes of action are DISMISSED with leave to amend;

2. Defendant's Motion to Dismiss Plaintiffs' Third, Fourth, Sixth and Seventh Causes of Action is DENIED;

3. Plaintiffs are granted thirty (30) days from the date of this order is filed to file a First Amended Complaint addressing the deficiencies of any dismissed claim.

IT IS SO ORDERED.

Dated:   **March 4, 2015**                        _/s/ Barbara A. McAuliffe_
                                                                UNITED STATES MAGISTRATE JUDGE